752

BOUCHILLON *v.* STATE.[*]

(Division B. Nov. 5, 1928. Suggestion of Error Overruled Dec. 3, 1928.)

[118 So. 726. No. 27469.]

*Corpus Juris-Cyc. References:  Homicide, 30CJ, section 434, p. 206, n. 7.

*Bratton & Mitchell,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *C. A. Bratton,* for appellant, and *Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J. The appellant was indicted, tried, and convicted of the murder of Purdon, and given a life sentence in the penitentiary. It appears from the evidence that on the 4th day of February, 1928, Tom Bouchillon and his two sons, Hugh and Lindsey Bouchillon, went to the village of Randolph, to attend a trial in the justice of the peace court, and while at that place Tom Bouchillon and a man named Rogers had a difficulty—Rogers living upon land owned by the father of the deceased. On returning from the village, the Bouchillons stopped at the appellant's house, and he got in the car with them, it appearing that there was some apprehension on the part of Tom Bouchillon because of threats of a general nature, which had been communicated to him without any person being named as making the threats, and without any showing against whom the threats were made. As they came to the place of Egg Purdon, the father of Albert Purdon, Albert Purdon and a son-in-law of Egg Purdon were at the place, standing at, or in front of, the gate, talking. Egg Purdon motioned to Tom Bouchillon to stop, and stated to him that he wanted to talk to him, and the latter got out of the car and walked off a few steps with Egg Purdon, when the deceased, Albert Purdon, went to one of their cars, either his or his brother-in-law's, took the shot gun from it, walked near the Bouchillon car, and stated to the Bouchillons that he wanted fair play.

What took place thereafter is in conflict. The state witnesses testified that Albert Purdon had the gun under his arm, and that he was doing nothing with the gun when the appellant opened fire with the pistol, from the car, killing him; that the gun was not fired by Albert Purdon at the time.

The testimony for the defendant was to the effect that when Egg Purdon called to Tom Bouchillon, or motioned to him to stop as he wanted to talk with him, the former had a pistol in his hand; that Bouchillon got out of his car and started walking off with Egg Purdon, when the deceased came up from his car with a gun in his hands; drew it upon a brother of the appellant, and that both appellant, and his brother grabbed for the gun, the appellant getting the gun in his hands when it was discharged, part of the shot going through the car; that the deceased unbreached the gun, and had started to reload it, when appellant fired upon him with the pistol, firing four times, killing deceased; that thereupon the mother of deceased ran up and got the gun; appellant walked around the car, and his brother took the gun from Mrs. Purdon, removed the shells which she had put in it, and handed it back to her; after which the Bouchillons got in their car and moved away.

The appellant offered to show by one of the Bouchillons that at Randolph he was asked by a person if he were armed, and that he replied that he was not; that he stated to said witness, Bouchillon, that he had better get something, as they were making "some heavy threats around there," and Bouchillon replied that he did not "reckon he would need anything."

These alleged threats were not made with reference to any particular person, nor were they shown to have been made by any particular person. The point which the appellant tried to make, to show that the evidence ought to have been admitted, is that the deceased was present in Randolph at a fight between Bouchillon and Rogers, and that he encouraged Rogers in the fight, calling out to him, "Come out from under him, Ab, I am with you, best damned man in Randolph," or some words to that effect, and that afterwards Rogers met some witness and had blood upon his head, and the witness remarked about the blood upon him, and Rogers said,

"Yes, and there will be a hell of a lot more spilled before night," or something to that effect.

We do not think that it is error to have excluded this threat, which was not made against the appellant by the deceased, or against the father or brothers of appellant, but, if made at all, was made by Rogers, and against no particular person.

It was assigned as error that the appellant offered a witness to show that the car in which appellant was riding when they approached the Purdons' house had shot holes in the top, and other places that looked like lead pencil marks, on the morning following the killing; this witness being offered to corroborate the testimony of appellant and his witnesses as to what occurred at the place of the shooting. When this witness was on the stand testifying, he was asked by the trial judge if he knew the condition of the car when he saw it to be as it was on the day preceding, and the witness said he did not know, that he did not see the car on the day of the shooting; and the judge excluded the evidence as stated by him, because it did not appear that the car was in the same condition at the time the witness saw it as it was the day before; and there was no effort by the defendant to show that the car was in the same condition at the time the witness saw it as it was on the day of the shooting, or immediately thereafter. Before such evidence was admissible, it was necessary, of course, to show that the car had not been tampered with. It was possible that this could have been done between the time of the killing and the time that witness saw it.

We do not think there is any reversible error in the trial, and the judgment is affirmed.

*Affirmed.*